Red Valve, Inc. v. Titan Valve, Inc., 2019 NCBC 57.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1064

RED VALVE, INC. and
HILLENBRAND, INC.,

Plaintiffs,

v.

TITAN VALVE, INC.; BEN PAYNE;
FABIAN AEDO ORTIZ; and JOHN
DOES 1-10,

Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' PETITION FOR
REASONABLE EXPENSES
RESULTING FROM PLAINTIFFS'
SECOND MOTION FOR SANCTIONS**

1. **THIS MATTER** is before the Court upon Plaintiffs Red Valve, Inc. and Hillenbrand, Inc.'s ("Red Valve" or "Plaintiffs") Petition for Reasonable Expenses Resulting from Plaintiffs' Second Motion for Sanctions (the "Petition") in the above-captioned case.

2. After considering the Petition, the parties' materials offered in support of and in opposition to the Petition, and other relevant matters of record, the Court hereby **GRANTS** the Petition in part, **DENIES** the Petition in part, **ENTERS** the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, and **ORDERS** relief as set forth below.

> *Nelson Mullins Riley & Scarborough LLP, by David N. Allen, Benjamin S. Chesson, and Anna Majestro, for Plaintiffs Red Valve, Inc. and Hillenbrand, Inc.*
>
> *Bell, Davis & Pitt, P.A., by Edward B. Davis and Derek Bast, for Defendants Titan Valve, Inc., Ben Payne, Fabian Aedo Ortiz, and Doug Farris.*[1]

---

[1] Bell, Davis & Pitt, P.A. first appeared as counsel of record for Defendants in this action on October 18, 2018. By Order dated April 4, 2019, the Court granted Michael L. Carpenter,

Bledsoe, Chief Judge.

## I.

## FINDINGS OF FACT

A.     Procedural Background[2]

3.     On January 11, 2019, the Court granted Plaintiffs' November 5, 2018 Motion for Sanctions (the "First Sanctions Order"). *See Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 5, at *21 (N.C. Super. Ct. Jan. 11, 2019). Among other sanctions,[3] the Court ordered the forensic examination of all data sources used by Defendants since July 2017. *Id.* at *33. The Court permitted Plaintiffs' forensic expert, Reliance Forensics, LLC ("Reliance"), to conduct the forensic examination.[4] *Id.* As required by the First Sanctions Order, the parties negotiated a device discovery protocol (the

---

Marshall P. Walker, Christopher M. Whelchel, and the law firm of Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.'s Consent Motion to Withdraw as Counsel for Defendants.

[2] The procedural and factual background of this matter is set out more fully in *Red Valve, Inc. v. Titan Valve, Inc.*, 2018 NCBC LEXIS 139 (N.C. Super. Ct. Mar. 14, 2018); *Red Valve, Inc. v. Titan Valve, Inc.*, 2018 NCBC LEXIS 31 (N.C. Super. Ct. Apr. 10, 2018), *Red Valve, Inc. v. Titan Valve, Inc.*, 2018 NCBC LEXIS 41 (N.C. Super. Ct. Apr. 17, 2018), *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 5 (N.C. Super. Ct. Jan. 11, 2019), and *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57 (N.C. Super. Ct. Sept. 3, 2019).

[3] The Court also ordered Defendants to pay Plaintiffs' reasonable expenses incurred in bringing the First Sanctions Motion, including Plaintiffs' reasonable attorneys' fees and expenses, *Red Valve, Inc.*, 2019 NCBC LEXIS 5, at *30–31, in the total amount of $108,667.50, (Order Pls.' Petition Reasonable Expenses ¶ 46, ECF No. 178.)

[4] In the First Sanctions Order, the Court ordered Plaintiffs "to initially bear [the] cost" of the forensic device discovery but noted that the Court would "consider shifting the costs of this examination at a later date for good cause shown." *Red Valve, Inc.*, 2019 NCBC LEXIS 5, at *33 n.12.

"Device Discovery Protocol"), *id.*, to govern the forensic examination, (*see* Device Discovery Protocol, ECF No. 152.)

4. On March 13, 2019, Plaintiffs filed a Second Motion for Sanctions and Contempt (the "Second Sanctions Motion") relating, in part, to the information uncovered in Reliance's forensic examination.

5. By Order and Opinion dated September 3, 2019 (the "Second Sanctions Order"), the Court granted Plaintiffs' Second Sanctions Motion and, pursuant to its inherent authority and under North Carolina Rule of Civil Procedure 37(b), ordered Defendants Titan Valve, Inc. ("Titan"), Ben Payne ("Payne"), and Fabian Aedo Ortiz ("Aedo") (collectively, the "Titan Defendants") to pay Plaintiffs' reasonable expenses, including attorneys' fees, "incurred in (i) investigating the conduct necessitating the Second Sanctions Motion and (ii) seeking and obtaining the relief afforded through the Second Sanctions Motion, including prosecuting the Second Sanctions Motion." *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57, at *82–83 (N.C. Super. Ct. Sept. 3, 2019). In addition, the Court concluded that good cause existed to shift the costs of the forensic examination to the Titan Defendants. *Id.* at *77. The Court accordingly authorized Plaintiffs to file a petition for payment of those expenses, together with supporting materials.[5]

---

[5] The Court forecasted at the conclusion of the June 4, 2019 hearing on the Second Sanctions Motion that it intended to enter sanctions and order some or all of the Titan Defendants to pay Plaintiffs' reasonable expenses, including reasonable attorneys' fees. The Court authorized Plaintiffs to petition the Court for payment of those reasonable expenses and set a briefing schedule on the anticipated petition. Plaintiffs' Petition was thus filed prior to the Court's issuance of the Second Sanctions Order.

6. Plaintiffs filed the Petition on June 18, 2019. (*See* Pls.' Pet. Reasonable Expenses Pls.' Second Mot. Sanctions [hereinafter "Pls.' Pet."], ECF No. 210.) In support of the Petition, Plaintiffs tendered an affidavit of Plaintiffs' counsel, (Pls.' Pet. Ex. A [hereinafter "Chesson Aff. Supp. Pls.' Pet."], ECF No. 210.1), and a spreadsheet documenting all tasks and time worked for which Plaintiffs seek attorneys' fees (the "Spreadsheet"), (Chesson Aff. Supp. Pls.' Pet. Ex. 1 [hereinafter "Pls.' Spreadsheet"], ECF No. 210.1). Plaintiffs' Spreadsheet separates Plaintiffs' counsel's work into categories and contains the date of the hours billed, the attorney or paralegal who conducted the respective task, a brief description of the task, the hours spent on the task, the rate charged for that task, and the total amount charged. (*See* Pls.' Spreadsheet.) In total, Plaintiffs seek $174,780.00 in attorneys' fees for an asserted 557.2 hours of work performed by Plaintiffs' counsel and paralegal. (*See* Pls.' Spreadsheet.)

7. Plaintiffs also tendered an affidavit of their digital forensic expert, Clark C. Walton, Esq. ("Walton") of Reliance. (Pls.' Pet. Ex. B [hereinafter "Walton Aff. Supp. Pls.' Pet."], ECF No. 210.2.) Plaintiffs request $93,397.50 for an asserted 662.55 hours of work performed by Reliance. (*See* Walton Aff. Supp. Pls.' Pet. ¶ 42.)

8. In response to the Petition, the Titan Defendants argue, among other things, that Plaintiffs' "requested fees and expenses go beyond the scope of the conduct at issue in Plaintiffs' Second Sanctions Motion." (Defs.' Resp. Opp'n Pls.' Pet. Expenses Resulting Second Mot. Sanctions 1 [hereinafter "Defs.' Resp."], ECF No. 213.) In addition, the Titan Defendants contend that the Court should reduce Plaintiffs'

requested expenses, including attorneys' fees, in light of Plaintiffs' recent settlement with former defendant Greg Farris ("Farris"). (*See* Defs.' Resp. 3–7.) The Titan Defendants submitted an annotated fee schedule objecting to and adjusting Plaintiffs' billing entries and requested fees in the Spreadsheet. (Defs.' Resp. Ex A [hereinafter "Defs.' Annotated Spreadsheet"], ECF No. 213.1.)

9. The Petition has been fully briefed and is ripe for determination. The Court concludes, in the exercise of its discretion, that a hearing would not assist the Court in ruling on the Petition and thus decides this matter without a hearing. *See* BCR 7.4 ("The Court may rule on a motion without a hearing.").

II.

CONCLUSIONS OF LAW

A.   Legal Standard

10. Trial courts retain the inherent authority "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). To that end, it is "within the inherent power of the trial court to order [a party] to pay [the opposing party's] reasonable costs including attorney's fees for failure to comply with a court order." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987); *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *Out of the Box Developers, LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *9–10 (N.C. Super. Ct. Mar. 20, 2014); *see also Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779,

782 (1999) ("The trial court also retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rule 37.").

11.     Separate and apart from a trial court's inherent authority to impose monetary sanctions, Rule 37(b)(2) of the North Carolina Rules of Civil Procedure authorizes an award of reasonable expenses, in addition to other possible sanctions, when "a party or an officer, director, or managing agent of a party" fails to obey a court order regarding discovery. *See* N.C. R. Civ. P. 37(b)(2). In such circumstances, "the court shall require the party failing to obey the order to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the court finds that the failure was substantially justified[.]" *Id.*

12.     The amount of attorneys' fees to be awarded is left to the trial court's discretion and "will not be disturbed without a showing of manifest abuse of [that] discretion." *Bryson v. Cort*, 193 N.C. App. 532, 540, 668 S.E.2d 84, 89 (2008). A trial court will only be held to have abused its discretion "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *E. Brooks Wilkins Family Med., P.A. v. WakeMed*, 244 N.C. App. 567, 578, 784 S.E.2d 178, 185 (2016).

13.     Generally, an award of attorneys' fees requires "that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 672, 554 S.E.2d 356, 366 (2001). When attorneys' fees are awarded as a sanction, there must be "findings to

explain . . . how the court arrived at" the awarded amount. *Dunn v. Canoy*, 180 N.C. App. 30, 50, 636 S.E.2d 243, 255–56 (2006).

14. The Court's award of expenses, including attorneys' fees, must be reasonable. *See* N.C. R. Civ. P. 37(b)(2); *Daniels*, 320 N.C. at 674, 360 S.E.2d at 776.

B. Apportionment Among Defendants

15. Plaintiffs and the Titan Defendants vigorously dispute whether the Court should reduce or adjust Plaintiffs' requested expenses, including attorneys' fees, in light of Plaintiffs' recent settlement with Farris.

16. Aedo, Payne, and Farris incorporated Titan on February 6, 2018 and thereafter jointly owned and operated that entity. The Court concluded in resolving the First and Second Sanctions Motions that, during the course of this litigation, all three individual Defendants engaged in sanctionable conduct. *See Red Valve, Inc.*, 2019 NCBC LEXIS 57; *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 5.

17. At the June 4, 2019 hearing on the Second Sanctions Motion, Plaintiffs' counsel withdrew that Motion to the extent it was asserted against Farris in light of the anticipated settlement with him. On June 25, 2019, Plaintiffs and Farris filed a Joint Motion to Enter Consent Order.[6] (*See* Pls. & Farris' Joint Mot. Enter Consent Order Between Red Valve, Inc. & Hillenbrand, Inc. & Greg Farris, ECF No. 211.) Pursuant to the Consent Order, which the Court entered on June 26, 2019, Plaintiffs dismissed with prejudice all claims previously asserted against Farris. (*See* Consent

---

[6] It bears mentioning that while Farris and the Titan Defendants were represented by the same counsel throughout the course of this litigation, Farris was represented by separate counsel for settlement purposes.

Order Between Red Valve, Inc. and Hillenbrand, Inc. and Greg Farris ¶ 7 [hereinafter "Consent Order"], ECF No. 212.)  The Consent Order reflects that Farris was to pay Plaintiffs a "confidential settlement amount" as consideration.  (*See* Consent Order ¶ 64.)

18.    According to the Titan Defendants, Plaintiffs "seek[] an improper double recovery . . . by failing to discount [their] Petition to reflect [their] settlement with Farris."  (Defs.' Resp. 3.)  The Titan Defendants contend that the Farris settlement should cause the Court to offset Plaintiffs' requested amounts by one-third.  (Defs.' Resp. 6.)  The Titan Defendants argue that a one-third reduction is reasonable, because "Farris was one of three original individual Defendants, all of whom were co-owners of Titan."[7]  (Defs.' Resp. 6.)

19.    Plaintiffs respond that their "settlement with Farris related solely to the merits of Plaintiffs' claims" and "was not related to Plaintiffs' Second Motion for Sanctions[.]"  (Pls.' Reply Pet. Reasonable Expenses Pls.' Second Mot. Sanctions 3 [hereinafter "Pls.' Reply"], ECF No. 214.)  According to Plaintiffs, because the costs they seek through the Petition are "unrelated to the merits of Plaintiffs' lawsuit against Defendants or against Farris," an award of those costs would not result in an improper double recovery.  (Pls.' Reply 3.)

20.    The Titan Defendants further argue that "[b]illing entries that specifically mention work related to Farris should be eliminated entirely as non-compensable in light of the settlement."  (Defs.' Resp. 6–7.)  In response, Plaintiffs contend that

---

[7] The Consent Order discloses that "Farris has terminated his ownership interest in Titan Valve." (Consent Order ¶ 3.)

because "Farris was Titan's Vice President and was acting in that capacity when he engaged in sanctionable conduct[,] . . . Titan is responsible for this conduct regardless of any settlement" between Plaintiffs and Farris. (Pls.' Reply 4.) Additionally, Plaintiffs point out that the Titan Defendants, by requesting the Court to exclude work related to Farris in addition to seeking a one-third across-the-board reduction, seek to "effectively provide Defendants a double set-off related to Farris's conduct." (Pls.' Reply 3.)

21. While the Court agrees that certain adjustments to Plaintiffs' Petition are necessary, the Court is not persuaded that either side's position provides the rule for decision in this matter.

22. In order for reasonable expenses, including attorneys' fees, to be recoverable as a sanction, there must be a causal link between a sanctioned party's conduct and the expenses incurred by an opposing party. Generally, an award of monetary sanctions should be limited to those fees and expenses incurred as a result of the sanctioned party's improper conduct. *See, e.g.*, N.C. R. Civ. P. 37(b)(2) (providing that the court "shall require the party failing to obey the [discovery] order to pay the reasonable expenses, including attorney's fees, *caused by the failure*[.]" (emphasis added)); *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 ("[A] court [using its inherent sanctioning authority] can shift only those attorney's fees incurred because of the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong."); *Daniels*, 320 N.C. at 674–75, 360 S.E.2d at 776 (concluding trial court had the "inherent power to tax [the] plaintiff with the reasonable costs,

including attorney's fees incurred by [the] defendant" at a trial in which "plaintiff's counsel failed to comply with the court's order prohibiting the introduction of [certain] evidence"). Thus, where a single party's sanctionable conduct causes the opposing party to incur expenses, those expenses, if reasonable, may be shifted to the sanctioned party.

23. Payment of reasonable expenses becomes more complicated where, as here, two or more parties have engaged in sanctionable conduct, and payment allocation is at issue. *See Red Valve, Inc.*, 2019 NCBC LEXIS 57; *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 5. While certain expenses incurred by an innocent party may be attributable to the conduct of only one of multiple sanctioned parties and thus divisible, other incurred expenses may be attributable to common conduct among the sanctioned parties and thus indivisible. Further, it may not be possible to determine with precision the degree of fault among sanctioned parties to permit allocation of indivisible expenses. Nevertheless, courts must seek to determine the relative fault among co-parties and allocate sanctions accordingly. *See* N.C. R. Civ. P. 37(b)(2); *see also, e.g.*, *White v. GM Corp.*, 908 F.2d 675, 683 (10th Cir. 1990) ("[W]e believe the trial court erred in not making specific findings on the degree of fault among the sanctioned plaintiffs to permit us to determine whether joint and several liability is justified.").

24. Courts often hold sanctioned parties jointly and severally liable for indivisible monetary sanctions arising from common conduct. *See Brooks v. Giesey*, 334 N.C. 303, 318 n.6, 432 S.E.2d 339, 348 (1993) (concluding trial court acted within

its discretion when imposing joint and several liability for monetary sanctions against co-plaintiffs where the "award was for costs incurred by defendants in proving matters denied by plaintiffs in [certain] discovery responses"); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1170 (9th Cir. 1994) (concluding trial court acted within its discretion when imposing joint and several liability for Rule 37(b) monetary sanctions where "each [plaintiff corporation] had disregarded discovery orders" and evidence suggested that the "corporations were not independent entities"); *Montgomery v. Etreppid Techs., LLC*, No. 3:06-CV-00056, 2010 U.S. Dist. LEXIS 43304, at *54–55 (D. Nev. Apr. 5, 2010) ("A court may hold sanctioned parties jointly and severally liable. Pursuant to general tort law, joint and several liability is appropriate when the independent tortious conduct of each of two or more persons is a legal cause of a single and indivisible harm to the injured party. That the Court may apportion fault does not render an indivisible injury divisible for purposes of the joint and several liability rule." (citations omitted)); *Lawrence v. Richman Grp. of Conn., LLC*, 660 F. Supp. 2d 292, 302 (D. Conn. 2009) ("Lacking any basis for apportioning the award, the Court concludes that the monetary sanctions should be imposed jointly and severally on [plaintiff's two attorneys]."); *Orlando Gateway Partners, LLC v. Good Gateway, LLC (In re Orlando Gateway Partners, LLC)*, 2016 Bankr. LEXIS 1866, at *34 (Bankr. M.D. Fla. Apr. 29, 2016) (imposing joint and several liability for monetary sanctions where defendants "were working jointly to defeat the Plaintiffs' legitimate efforts to get relevant discovery" and "[n]o one party [was] disproportionately more responsible, or irresponsible, than another"); *cf. Thomas E. Hoar, Inc. v. Sara Lee*

*Corp.*, 900 F.2d 522, 527 (2d Cir. 1990) ("We also reject [plaintiff's counsel's] contention that the district court failed to determine fault and allocate the Rule 37 sanctions accordingly. In holding [plaintiff] and [plaintiff's counsel] *jointly and severally* liable for the monetary sanction, the [trial court] (and the magistrate) determined that [plaintiff] and its counsel were each equally responsible for the failure to comply with discovery requests and court orders. The record fully supports that determination."(emphasis in original)).

25. A court may also apportion a sanctions award between and among sanctioned parties by approximating the fault each bears for the sanctionable conduct. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("An apportioned percentage is not an abuse of discretion because it would be impossible to determine with mathematical precision the fees and costs generated only by [counsel who acted in bad faith]."); *Out of the Box Developers, LLC v. Logicbit Corp.*, 2013 NCBC LEXIS 30, at *11 (N.C. Super. Ct. July 10, 2013) ("The award of fees and expenses should be allocated 90% to the Doan Defendants and 10% to the LogicBit Defendants."); *see also White*, 908 F.2d, at 683 ("[W]e believe the trial court erred in not making specific findings on the degree of fault among the sanctioned plaintiffs to permit us to determine whether joint and several liability is justified."); *Bartos v. Pennsylvania*, No. 1:08-CV-0366, 2010 U.S. Dist. LEXIS 72619, at *27 (M.D. Pa. July 20, 2010) ("[W]e conclude that the appropriate way in which to allocate these sanctions is to require each [sanctioned party] to bear in equal measures half of these fees and costs as sanctions. Dividing these costs in half fairly

allocates these sanctions in this case where the culpability of [sanctioned parties] is quite comparable.").

26. Applying these principles here, the Court first addresses Titan's responsibility for the conduct giving rise to the sanctions award and concludes, in the exercise of its discretion, that Titan shall be liable for all of Plaintiffs' reasonable expenses awarded herein, regardless of which individual Defendant caused Plaintiffs to incur the awarded expenses. As previously noted, Rule 37(b) permits sanctions if "a party or an officer, director, or managing agent of a party" fails to obey a court order regarding discovery. N.C. R. Civ. P. 37(b)(2). It is undisputed that when Aedo, Payne, and Farris engaged in sanctionable conduct, they were acting not only in their individual capacities, but also in their capacities as owners, officers, and agents of Titan. Thus, because all of the expenses awarded to Plaintiffs herein were caused by those acting on behalf of Titan, the Court concludes, in the exercise of its discretion, that Titan should bear responsibility for all awarded expenses, including reasonable attorneys' fees. *See, e.g.*, *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 255, 515 S.E.2d 457, 464 (1999) (concluding trial court could impose monetary sanctions on corporate plaintiff under Rule 11 based on the conduct of plaintiff's officer).

27. Next, although the Court retains the ability to sanction Farris despite his dismissal from this action, *see, e.g.*, *Bryson v. Sullivan*, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992) ("Dismissal does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated."), and the withdrawal of the Second Sanctions Motion against him,

*see, e.g.*, *Grubbs v. Grubbs*, No. COA16-129, 2017 N.C. App. LEXIS 146, at *38 (N.C. Ct. App. Mar. 7, 2017) ("A judge's power to admonish counsel or parties can be either *sua sponte* or subject to a motion from a party, such as a show cause motion or Rule 11 sanctions."), the Court concludes, in the exercise of its discretion, that in light of Plaintiffs' decision not to seek their reasonable expenses directly from Farris, the Court shall not impose monetary sanctions against Farris for his sanctionable conduct. Because Farris acted at all times as Titan's officer, director, or agent, however, Titan shall be liable for Plaintiffs' reasonable expenses caused by Farris's misconduct. *See, e.g.*, *Polygenex Int'l, Inc.*, 133 N.C. App. at 255, 515 S.E.2d at 464.

28. Finally, the Court concludes, in the exercise of its discretion, that because all of the expenses awarded hereunder against Aedo and Payne result from their conduct as Titan's officers, directors, or agents, Titan shall be jointly and severally liable with Aedo and Payne for all amounts assessed against these two individual Defendants. *Id.*; *see, e.g.*, *Vorachek v. Citizens State Bank*, 421 N.W.2d 45, 49 (N.D. 1988) ("[I]f the co-parties are a corporation and its officer or managing agent sued in his individual capacity, his failure may serve as a predicate for the imposition of the sanction against both." (quoting 4A Moore's Federal Practice ¶ 37.05 at 37-107 n.21 (2d ed. 1987)); *see also Letelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984) ("Rule 37 sanctions ensure that a party will not benefit from non-compliance with discovery orders. Yet, one party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party.").

29. The Court next turns to an appropriate allocation of reasonable expenses among the individual Defendants.

30. First, the Court concludes, in the exercise of its discretion, that the reasonable, divisible expenses identified in Plaintiffs' Petition should be borne by the specific individual Defendant whose conduct caused Plaintiffs to incur those expenses. *See, e.g.*, N.C. R. Civ. P. 37(b)(2); *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. Thus, no individual Defendant shall be liable for expenses that Plaintiffs incurred solely because of another individual Defendant's sanctionable conduct. As a result, Aedo shall not be liable for expenses caused solely by Payne's or Farris's sanctionable conduct, and Payne shall not be liable for expenses caused solely by Aedo's or Farris's sanctionable conduct.

31. Next, the Court concludes, in the exercise of its discretion, that Aedo and Payne shall each be individually liable for one-third of the indivisible expenses caused by the three individual Defendants' common or joint conduct. Such indivisible expenses shall include, *inter alia*, the expenses Plaintiffs incurred in carrying out the Device Discovery Protocol and in preparing the Second Sanctions Motion. The Court further concludes that Aedo and Payne shall each be jointly and severally liable with Titan for his respective one-third share of such indivisible expenses but not jointly and severally liable for each other's one-third share or for Farris's one-third share of those expenses. Titan shall be solely responsible for Farris's one-third share of Plaintiffs' total indivisible expenses and, as noted above, Farris shall not be liable to Plaintiffs for these amounts. Thus, the Court concludes, in the exercise of its

discretion, that Aedo and Titan will be responsible for Aedo's one-third share of Plaintiffs' recoverable indivisible expenses, Payne and Titan will be responsible for Payne's one-third share of these indivisible expenses, and Titan alone will be responsible for Farris's one-third share of indivisible expenses.

C.     Reasonableness of Rates

32.     The Court next analyzes the reasonableness of the hourly rates charged by Plaintiffs' counsel and Reliance.

33.     The reasonableness of attorneys' fees in this State "is governed by the factors found in Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 96, 717 S.E.2d 9, 33 (2011). "The factors to be considered in determining whether a fee is clearly excessive" under Rule 1.5(a) of the Revised Rules of Professional Conduct include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a).

34.     Plaintiffs' counsel charged at the following hourly rates for the fees it seeks in the Petition: (i) $450 for David Allen, a partner with approximately thirty-nine years' experience; (ii) $350 for Benjamin Chesson and Julia Hartley, partners with approximately nine and thirteen years' experience, respectively; (iii) $250 for Anna Majestro, an associate who has been a member of the North Carolina State Bar since 2016; and (iv) $150 for Bobbie Kullman, a paralegal with fifteen years' experience. (Chesson Aff. Supp. Pls.' Pet. ¶¶ 3–4.)

35.     The Titan Defendants do not object to the hourly rates Plaintiffs' attorneys have charged.  Moreover, the Court has already considered the reasonableness of the rates charged by Plaintiffs' counsel in this action and found them to be reasonable. (*See* Order Pls.' Petition Reasonable Expenses ¶¶ 11–16, ECF No. 178.)  Based on Plaintiffs' counsel's affidavit, the previous holdings of this Court, and the Court's knowledge of the hourly rates of local attorneys providing similar services in this locality, the Court concludes that Plaintiffs' attorneys' rates are reasonable and are within those "customarily charged in [this] locality for similar legal services."  N.C. Rev. R. Prof. Conduct 1.5(a)(3).

36.     The Court similarly concludes that the rates charged by Reliance are reasonable.  Aside from "machine only" data processing and select flat fee tasks, such as imaging and basic reporting on smartphones, Reliance generally bills hourly like most law firms. (Walton Aff. Supp. Pls.' Pet. ¶ 9.)  For consultation and analysis work by Reliance's employees, Plaintiffs seek to recover rates between $225 and $275 per hour. (Walton Aff. Supp. Pls.' Pet. ¶ 9.)  In addition, Walton charges at an hourly

rate of $300 for time spent preparing affidavits.[8]  (Walton Aff. Supp. Pls.' Pet. ¶ 9.) Plaintiffs have identified the qualifications and experience of Reliance's employees, (Walton Aff. Supp. Pls.' Pet. ¶¶ 1–5), and offer evidence that these rates are commensurate with, if not slightly below, the regional market for such services based on the skills and qualifications of Reliance's timekeepers,[9] (Walton Aff. Supp. Pls.' Pet. ¶ 10).  The Titan Defendants do not object to the rates Reliance has charged, and the Court finds, based on the evidence presented, that those rates are reasonable and properly applied for purposes of resolving the Petition.

D.    Time and Labor Expended by Plaintiffs' Counsel

37.    The Court next evaluates the time and labor expended by Plaintiffs' counsel. *See* N.C. Rev. R. Prof. Conduct 1.5(a)(1).  The Court considers this factor in light of the Court's conclusion in the Second Sanctions Order that Plaintiffs are entitled to their reasonable expenses, including reasonable attorneys' fees, "incurred in (i) investigating the conduct necessitating the Second Sanctions Motion and (ii) seeking and obtaining the relief afforded through the Second Sanctions Motion, including prosecuting the Second Sanctions Motion." *Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *76, 82–83.

---

[8]  Walton is a graduate of Georgetown University Law Center and a North Carolina licensed attorney.  (Walton Aff. Supp. Pls.' Pet. ¶ 3.)  He has personally conducted or overseen over 600 digital investigations on behalf of legal counsel, corporate entities, and individuals. (Walton Aff. Supp. Pls.' Pet. ¶ 2.)

[9]  Indeed, according to Walton, "Reliance underwent a rate increase in December 2018 to bring its rates more in line with the present state of the regional digital forensics market. The rates for this matter were not subject to that rate increase[,]" with the exception of one employee who was hired after Reliance was first engaged in this matter.  (Walton Aff. Supp. Pls.' Pet. ¶ 10.)

38.     Plaintiffs' Spreadsheet separates Plaintiffs' counsel's billing entries into four task categories: (i) prosecuting Plaintiffs' November 6, 2018 Verified Motion for Order to Show Cause (the "First Show Cause Motion"), including time spent investigating the conduct underlying the First Show Cause Motion; (ii) conducting device discovery pursuant to the Court's First Sanctions Order; (iii) addressing Return Protocol deficiencies; and (iv) addressing Defendants' access to and use of Red Valve's price data, including prosecuting the Second Sanctions Motion.

39.     The Titan Defendants contend that much of the time identified for payment on Plaintiffs' Spreadsheet should be adjusted because (i) certain billing entries are for tasks outside the scope of the Second Sanctions Order, (ii) certain billing entries reflect an excessive amount of time spent on certain tasks, and (iii) certain billing entries reflect time spent addressing Farris's sanctionable conduct and are thus non-compensable.  (*See* Defs.' Annotated Spreadsheet 1.)

   1.   <u>Fees Associated with First Show Cause Motion</u>

40.     Plaintiffs seek to recover $46,020.00 (144.8 hours) in attorneys' fees for time spent prosecuting the First Show Cause Motion, including time spent investigating the conduct underlying the First Show Cause Motion.  The Titan Defendants contend that the Court should disallow all attorneys' fees that Plaintiffs seek related to the First Show Cause Motion, because such fees are outside the scope of the Second Sanctions Order and thus not recoverable.

41.     As discussed in the Second Sanctions Order, Plaintiffs' First Show Cause Motion was based on (i) Aedo's contacting a Red Valve customer in violation of the Court's March 14, 2018 Temporary Restraining Order (the "TRO"), *see Red Valve, Inc.*

*v. Titan Valve, Inc.*, 2018 NCBC LEXIS 139 (N.C. Super. Ct. Mar. 14, 2018); (ii) Aedo's posting to Titan's public LinkedIn profile an image derived from a Red Valve trade secret in violation of the Court's preliminary injunction order (the "P.I. Order"), *see Red Valve, Inc. v. Titan Valve, Inc.*, 2018 NCBC LEXIS 41 (N.C. Super. Ct. Apr. 17, 2018); and (iii) Payne's solicitation and retention of a USB drive containing Red Valve build sheets (the "Build Sheets USB") in violation of the P.I. Order, *see Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *26–28. According to the Titan Defendants, "[t]hose incidents . . . were not the subject of Plaintiffs' Second Sanctions Motion," and thus Plaintiffs' associated attorneys' fees are non-compensable. (Defs.' Resp. 8.)

42. The Titan Defendants ignore, however, that Plaintiffs incorporated by reference into their Second Sanctions Motion the conduct underlying Plaintiffs' First Show Cause Motion. (*See* Pls.' Br. Supp. Second Mot. Sanctions & Contempt 10, ECF No. 169 ("Plaintiffs refer the Court back to Plaintiffs' prior Motion for Sanctions and Motion for Order to Show Cause for a full recitation of Defendants' truly reprehensible conduct.").) Indeed, this specific conduct provided a basis for the Court's ruling in the Second Sanctions Order that severe sanctions, including an award of Plaintiffs' reasonable expenses and attorneys' fees, were warranted. *See Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *76–77. As such, the Court concludes that the time Plaintiffs' counsel spent investigating the Titan Defendants' conduct underlying the First Show Cause Motion falls within the scope of recoverable attorneys' fees awarded in the Second Sanctions Order.

43. The Court, however, concludes that there is overlap in the time Plaintiffs spent preparing and presenting the First Show Motion Cause and the Second Sanctions Motion and that Plaintiffs should only be permitted to recover their attorneys' fees for bringing these matters to the Court's attention once. The Court will thus disallow all Plaintiffs' attorneys' fees incurred in prosecuting the First Show Cause Motion, including drafting the First Show Cause Motion and supporting briefs, analyzing Defendants' response to the motion, and preparing for and attending the hearing on the motion. Therefore, the Court concludes, in the exercise of its discretion, that the 75.0 hours of attorney time (totaling $21,600) which Plaintiffs seek to recover for these tasks are not recoverable under the Second Sanctions Order and will not be awarded.

44. The Court turns next to the remaining time entries in this category. As an initial matter, a review of the Spreadsheet makes plain that many of the billing entries are attributable to the conduct of a single individual Defendant and thus are divisible. In particular, the Court concludes that the billing entries associated with Aedo's posting the marketing image to LinkedIn in violation of the P.I. Order, *see id.* at *24–25, and his contact with a Red Valve customer in violation of the TRO, *see id.* at *22–24, were caused only by Aedo's conduct, for which he and Titan must bear sole responsibility (25.9 hours totaling $8,515.00). Likewise, the billing entries reflecting the time Plaintiffs' counsel spent investigating the Build Sheets USB (41.0 hours totaling $15,280.00) resulted only from Payne's conduct, *see id.* at *26–28, and he and Titan therefore must bear sole responsibility for these attorneys' fees.

45.   In addition, the Court concludes that Ms. Majestro's November 6, 2018 entry for "[i]nvestigat[ing] injunction violations" (2.5 hours for $625.00) is indivisible and should be borne one-third each by Aedo and Payne, with Titan bearing responsibility for the full amount.

46.   After making these adjustments, the Court concludes, in the exercise of its discretion, that Plaintiffs' reasonable attorneys' fees in connection with the First Show Cause Motion, should be paid and allocated as follows:

a. Titan shall pay Plaintiffs' reasonable attorneys' fees in the total amount of $24,420.00, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $8,515.00 in divisible fees caused solely by Aedo's conduct and for Aedo's one-third share of indivisible fees totaling $625.00 (i.e., $208.33) for a total amount of $8,723.33; and

c. Payne and Titan shall be jointly and severally liable to Plaintiffs for $15,280.00 in divisible fees caused solely by Payne's conduct and for Payne's one-third share of indivisible fees totaling $625.00 (i.e., $208.33) for a total amount of $15,488.33.

2.  Device Discovery

47.   Plaintiffs seek to recover $47,495.00 (151.1 hours) in attorneys' fees for time spent drafting the Device Discovery Protocol, implementing the Protocol, addressing Aedo's non-compliance with the Protocol, and analyzing device discovery.   In

response, the Titan Defendants contend that the total time spent by Plaintiffs' attorneys on certain tasks is excessive.[10]

48. To start, the Court concludes that Aedo and Titan shall be liable for all billing entries documenting the time Plaintiffs' attorneys spent addressing Aedo's failure to meet Device Discovery Protocol deadlines (14.9 hours totaling $4,835.00) because those tasks were incurred solely as a result of Aedo's conduct. The Court has reviewed Plaintiffs' relevant billing entries, and contrary to the Titan Defendants' contention, concludes, in the exercise of its discretion, that the time Plaintiffs' counsel spent in opposing Aedo's motion for extension was reasonable under the circumstances and should be awarded.

49. The remaining billing entries (136.2 hours totaling $42,660.00) reflect Plaintiffs' counsel's time spent drafting the Device Discovery Protocol, implementing the Protocol, and analyzing the device discovery. The Court concluded in the First Sanctions Order that a forensic examination of Defendants' data sources was appropriate based on substantial evidence showing that the three individual Defendants had each engaged in sanctionable conduct by withholding responsive information in discovery. The Device Discovery Protocol process was developed to guide this forensic examination. The Court therefore concludes that all of this attorney time resulted from the common or joint conduct of the individual Defendants and is thus indivisible. The Court further concludes, in the exercise of its discretion,

---

[10] The Titan Defendants also advance in connection with this and each remaining task category the now-rejected contention that the Court should reduce all entries by one-third in light of Plaintiffs' settlement with Farris.

that no adjustments to Plaintiffs' requested attorneys' fees are necessary or appropriate and that the fees sought for these tasks are reasonable and should be awarded.

50. The Court thus finds, in the exercise of its discretion, that Plaintiffs' reasonable attorneys' fees in connection with device discovery should be paid and allocated as follows:

    a. Titan shall pay Plaintiffs their reasonable attorneys' fees in the total amount of $47,495.00, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

    b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $4,835.00 in divisible fees caused solely by Aedo's conduct and for Aedo's one-third share of indivisible fees totaling $42,660.00 (i.e., $14,220) for a total amount of $19,055.00; and

    c. Payne and Titan shall be jointly and severally liable to Plaintiffs for Payne's one-third share of indivisible fees totaling $42,660.00 (i.e., $14,220) for a total amount of $14,220.00.

    3. <u>Return Protocol Deficiencies</u>

51. Plaintiffs seek to recover $9,720.00 (31.2 hours) in attorneys' fees for time spent addressing Return Protocol deficiencies. In addition to their across-the-board reduction argument, the Titan Defendants contend that the Court should disallow all time Plaintiffs' counsel spent addressing Farris's conduct. The Court disagrees.

52. As with other divisible fees discussed above, the Court concludes that Titan—but not Aedo or Payne—shall bear sole responsibility for payment of the

billing entries documenting the time Plaintiffs' attorneys spent addressing Farris's non-compliance with the Return Protocol (6.2 hours totaling $1,970.00), an amount the Court concludes, in the exercise of its discretion, is reasonable in these circumstances.

53.    The remaining billing entries (25 hours totaling $7,750.00) resulted from the common or joint conduct of the individual Defendants and thus reflect indivisible fees.  The Court concludes, in the exercise of its discretion, that no adjustments to Plaintiffs' requested attorneys' fees are necessary or appropriate and that the fees sought for these tasks are reasonable and should be awarded in full.

54.    Accordingly, the Court finds, in the exercise of its discretion, that Plaintiffs' reasonable attorneys' fees in connection with device discovery should be paid and allocated as follows:

    a.  Titan shall pay Plaintiffs' reasonable attorneys' fees in the total amount of $9,720.00, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

    b.  Aedo and Titan shall be jointly and severally liable to Plaintiffs for Aedo's one-third share of indivisible fees totaling $7,750.00 (i.e., $2,583.33); and

    c.  Payne and Titan shall be jointly and severally liable to Plaintiffs for Payne's one-third share of indivisible fees totaling $7,750.00 (i.e., $2,583.33).

    4.  <u>Access to and Use of Red Valve's Price Data</u>

55.    Plaintiffs seek to recover $71,545.00 (230.1 hours) in attorneys' fees for time spent addressing Defendants' access to and use of Red Valve's price data, including

prosecuting the Second Sanctions Motion. In response, the Titan Defendants principally contend that the total time spent by Plaintiffs' attorneys on certain tasks is excessive, arguing that the Court should reduce by 50% all billing entries containing the descriptions "[a]nalysis of P.I. Exhibits" and "[a]nalysis of P.I. Exhibits violations[,]" a total of 56.1 hours of attorney time, on this ground. (Defs.' Resp. 9.) The Court disagrees.

56. In particular, the Court concludes that it was reasonable for Plaintiffs, after learning of Aedo's access to and use of the P.I. Exhibits, to spend time determining whether Defendants engaged in further violations of the Court's orders. In that effort, it was reasonable for Plaintiffs' counsel to review use and access reports for dozens of devices to determine which Defendants possessed the P.I. Exhibits and the devices on which the Exhibits were stored. These reports, in the aggregate, contained several million lines of data for Plaintiffs to examine, and, after careful review of the billing entries, the Court concludes that the time spent on these tasks was appropriate and reasonable.

57. The Court further concludes that it was reasonable for Plaintiffs to investigate whether Defendants possessed other files that contained the P.I. Exhibits, a review which bore fruit and proved that certain of Defendants' representations were false. It was also reasonable for Plaintiffs to confer regularly with Reliance to understand their expert's findings, with Defendants' counsel to address the P.I. Exhibits and Reliance's conclusions, and internally to discuss litigation strategy in

light of Reliance's work. The Court concludes that the time spent on these tasks, too, was appropriate and reasonable.

58. The remaining billing entries in this section reflect 157.5 hours of attorney time totaling $48,315.00 and include time associated with drafting the Second Sanctions Motion and supporting briefs, analyzing Defendants' response to the motion, preparing for and attending the hearing on the motion, drafting the Petition, and analyzing a file missing from Defendants' privilege log. Although the Second Sanctions Motion was primarily based on Aedo's conduct, the motion sought sanctions based on Payne's and Farris's conduct as well, including their conduct first raised in the First Show Cause Motion. The Court thus concludes that these tasks resulted from the common or joint conduct of the individual Defendants and are therefore indivisible. The Court further concludes, in the exercise of its discretion, that no adjustments to Plaintiffs' requested attorneys' fees for these tasks are necessary or appropriate and that the fees sought are reasonable and should be awarded in full.

59. In addition, based on Aedo's admissions and the findings and conclusions in the Second Sanctions Order, the Court concludes that Aedo and Titan bear sole responsibility for causing Plaintiffs to incur the attorneys' fees reflected in the billing entries documenting Plaintiffs' attorneys' efforts to investigate Aedo's access to and use of Red Valve's price data and the P.I. Exhibits (76.2 hours totaling $23,230.00). The Court similarly concludes that no adjustments to these requested fees are appropriate and should therefore be awarded in full.

60.    Accordingly, the Court concludes, in the exercise of its discretion, that Plaintiffs' reasonable attorneys' fees in connection with Red Valve's price data should be paid and allocated as follows:

a. Titan shall pay Plaintiffs' reasonable attorneys' fees in the total amount of $71,545.00, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $23,230.00 in divisible fees caused solely by Aedo's conduct and for Aedo's one-third share of indivisible fees totaling $48,315.00 (i.e., $16,105.00) for a total amount of $39,335.00; and

c. Payne and Titan shall be jointly and severally liable to Plaintiffs for Payne's one-third share of indivisible fees totaling $48,315.00 (i.e., $16,105.00).

E.    Remaining Rule 1.5 Factors

61.    The Court finds that the remaining factors set forth in Rule 1.5(a) of the Revised Rules of Professional Conduct merit the award of attorneys' fees ordered herein.

62.    As to that portion of Rule 1.5(a)'s first factor considering "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," the Court finds that the work required in connection with the Second Sanctions Motion was challenging and required a high degree of skill, experience, and

specialized knowledge. Consideration of this factor weighs in favor of the attorneys' fees awarded hereunder.

63. With regard to Rule 1.5(a)'s fourth factor—the "amount involved and the results obtained"—the Court concludes that the value to Plaintiffs in preventing further misuse of its trade secrets and property is significant and that Plaintiffs substantially obtained the relief they sought in the Second Sanctions Motion. This factor thus weighs in favor of the Court's award of attorneys' fees hereunder.

64. Considering Rule 1.5(a)'s seventh factor—"the experience, reputation, and ability of the lawyer or lawyers performing the services"—the Court finds that Plaintiffs' attorneys have significant experience in complex business litigation matters and have shown great ability in investigating Defendants' misconduct, addressing complicated legal issues, and prosecuting the Second Sanctions Motion. The Court concludes that this factor weighs in favor of the Court's award of attorneys' fees in this case.

65. Finally, the Court has considered the remaining factors of Revised Rule of Professional Conduct 1.5(a)—to the extent they can be applied to an award of attorneys' fees in the context of sanctions—and finds that the attorneys' fees awarded herein are reasonable in light of these factors as well.

F.    Summary of Reasonable Attorneys' Fees Awarded

66. Accordingly, based on the above, the Court concludes, in the exercise of its discretion, that Plaintiffs' reasonable attorneys' fees should be paid and allocated as follows:

a. Titan shall pay Plaintiffs' reasonable attorneys' fees in the total amount of $153,180.00, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $36,580.00 in divisible fees caused solely by Aedo's conduct and for Aedo's one-third share of indivisible fees totaling $99,350.00 (i.e., $33,116.66) for a total amount of $69,696.66, for which Plaintiffs are entitled to seek recovery from Titan, Aedo, or both; and

c. Payne and Titan shall be jointly and severally liable to Plaintiffs for $15,280.00 in divisible fees caused solely by Payne's conduct and for Payne's one-third share of indivisible fees totaling $99,350.00 (i.e., $33,116.66) for a total amount of $48,396.66, for which Plaintiffs are entitled to seek recovery from Titan, Payne, or both.

G.    Reliance Forensics Expenses

67.    Plaintiffs also seek to recover Reliance's fees of $93,397.50 for 662.55 hours of work. In response, the Titan Defendants contend that certain of Reliance's expenses are outside the scope of the Second Sanctions Order and rely again on the now-rejected contention that the Court should reduce all remaining expenses by one-third to reflect Plaintiffs' settlement with Farris.

68.    Reliance's work was separated into the following four task categories (i) forensic examination and analysis of Payne's Build Sheets USB; (ii) forensic examination and analysis of Defendants' data sources pursuant to the First Sanctions

Order and Device Discovery Protocol; (iii) investigation and deletion of the P.I. Exhibits from Defendants' devices pursuant to the Court's March 14, 2019 Preliminary Order on Plaintiffs' Second Sanctions Motion; and (iv) drafting affidavits. (*See* Walton Aff. Supp. Pls.' Pet. ¶¶ 11–42.) The Court considers each in turn.

### 1. Payne USB Drive

69. Plaintiffs seek to recover $1,216.25 in costs and fees for 4.75 hours Reliance spent in connection with its forensic examination and analysis of Payne's Build Sheets USB. (Walton Aff. Supp. Pls.' Pet. ¶ 15.) The Titan Defendants contend that these expenses are non-compensable because Reliance's work did not address conduct at issue in the Second Sanctions Motion. As previously discussed, however, while Payne's solicitation and retention of the Build Sheets USB in violation of the P.I. Order was first raised in connection with Plaintiffs' First Show Cause Motion, Plaintiffs offered this conduct as a basis for sanctions in the Second Sanctions Motion. The Court thus concludes that these expenses are properly recoverable through the Second Sanctions Motion.

70. Because Reliance's expenses related to the Build Sheets USB were incurred solely because of Payne's conduct, the Court concludes, in the exercise of its discretion, that Payne and Titan shall be jointly and severally liable for these costs in the total amount of $1,216.25.

### 2. Device Discovery Protocol

71. Plaintiffs also seek to recover $82,886.25 in costs and fees for 614.8 hours Reliance spent in conducting its forensic examination and analysis of Defendants'

data sources under the First Sanctions Order and Device Discovery Protocol. (Walton Aff. Supp. Pls.' Pet. ¶ 36.) After thorough review, the Court concludes, in the exercise of its discretion, that the costs and fees Plaintiffs seek for these fees and expenses are reasonable and properly awarded hereunder. Proper allocation of these expenses among Defendants, however, bears further discussion.

72. In the First Sanctions Order, the Court concluded that a forensic examination was appropriate based on significant evidence showing that the three individual Defendants had engaged in sanctionable conduct by withholding responsive information in discovery. In response, Reliance thereafter forensically examined fifty-two devices and data sources of Defendants pursuant to the Device Discovery Protocol. (Walton Aff. Supp. Pls.' Pet. ¶ 20.)

73. Of those fifty-two devices and data sources, (i) nineteen were owned or used by Aedo, (ii) nineteen were owned or used by Payne, (iii) eight were owned or used by Farris, and (iv) six were Titan e-mail accounts that were not attributable to an individual Defendant.

74. After careful consideration, the Court concludes, in the exercise of its discretion, that Reliance's fees associated with the Device Discovery Protocol should be awarded in full and allocated among the individual Defendants based on the number of forensically examined devices and data sources each owned or used. As to the six general Titan e-mail accounts, the Court concludes that attributing two accounts to each of the three individual Defendants is fair and reasonable.

75. Apportioning in this way, the Court thus concludes, in the exercise of its discretion, that Reliance's fees and costs should be paid and allocated as follows:

a. Titan shall be liable for the fees and costs associated with all fifty-two devices and data sources in the total amount of $82,886.25, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable for the costs associated with twenty-one of the fifty-two devices and data sources (40.385%) in the total amount of $33,473.61; and

c. Payne and Titan shall be jointly and severally liable for the costs associated with twenty-one of the fifty-two devices and data sources (40.385%) in the total amount of $33,473.61.

3. Deletion of P.I. Exhibits

76. Plaintiffs seek to recover $4,363.75 in costs and fees for 22.75 hours spent on its investigation and deletion of the P.I. Exhibits from Defendants' devices. (Walton Aff. Supp. Pls.' Pet. ¶ 39.) Based on its review of the record, the Court concludes, in the exercise of its discretion, that the costs and fees Plaintiffs seek for these tasks are reasonable and properly awarded. Proper allocation among Defendants again merits discussion.

77. In its Preliminary Order on Plaintiffs' Second Sanctions Motion, the Court, in the exercise of its discretion and for good cause shown, concluded that Reliance should be permitted to conduct a forensic examination of all of Defendants' data sources—regardless of whether such data sources were subject to the Return Protocol

or Device Discovery Protocol—to search for data and metadata related to the P.I. Exhibits. (Prelim. Order Pls.' Mot. Sanctions ¶ 6(c), ECF No. 171.) The Court directed Reliance to "permanently delete from the Data Sources the P.I Exhibits and any copies thereof[.]" (Prelim. Order Pls.' Mot. Sanctions ¶ 6(c).) In total, Reliance deleted the P.I. Exhibits from eight devices and data sources. Of these, four were owned or used by Aedo, two were owned or used by Payne, and two were owned or used by Farris.

78. After review, and consistent with the allocation of Reliance's fees and costs associated with the Device Discovery Protocol, the Court concludes, in the exercise of its discretion, that Reliance's fees and costs associated with the deletion of the P.I. Exhibits should be apportioned based on the number of devices and data sources owned or used by each Defendant. Thus, the Court concludes, in the exercise of its discretion, that Reliance's fees and costs should be paid and allocated as follows:

   a. Titan shall be liable for the fees and costs associated with the deletion of the P.I. Exhibits on all eight devices and data sources in the total amount of $4,363.75, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

   b. Aedo and Titan shall be jointly and severally liable for the costs associated with deletion on four of the eight devices and data sources (50%) in the total amount of $2,181.87; and

c. Payne and Titan shall be jointly and severally liable for the costs associated with deletion on two of the eight devices and data sources (25%) in the total amount of $1,090.93.

4. Affidavits

79. Plaintiffs seek to recover $4,931.25 in fees and costs for 20.25 hours Reliance spent in preparing affidavits for purposes of this litigation. (Walton Aff. Supp. Pls.' Pet. ¶ 41.) Such fees and costs are indivisible. The Court concludes, in the exercise of its discretion and after thorough review, that the costs and fees Plaintiffs seek for these tasks are reasonable and properly awarded and, thus, that Reliance's fees and costs for this task should be paid and allocated as follows:

a. Titan shall be liable for Reliance's fees and costs associated with affidavit preparation in the total amount of $4,931.25, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable for Aedo's one-third share of these indivisible expenses in the total amount of $1,643.75; and

c. Payne and Titan shall be jointly and severally liable for Payne's one-third share of these indivisible expenses in the total amount of $1,643.75.

5. Summary of Reliance's Fees and Costs Awarded

80. Accordingly, based on the above, the Court concludes, in the exercise of its discretion, that Reliance's reasonable fees and costs should be paid and allocated as follows:

a. Titan shall pay Plaintiffs the reasonable fees and costs Reliance charged to Plaintiffs in the total amount of $93,397.50, with Aedo and Payne to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $35,655.48 in divisible fees and costs caused solely by Aedo's conduct and for Aedo's one-third share of indivisible fees and costs totaling $4,931.25 (i.e., $1,643.75) for a total amount of $37,299.23, for which Plaintiffs are entitled to seek recovery from Titan, Aedo, or both; and

c. Payne and Titan shall be jointly and severally liable to Plaintiffs for $35,780.79 in divisible fees and costs caused solely by Payne's conduct and for Payne's one-third share of indivisible fees and costs totaling $4,931.25 (i.e., $1,643.75) for a total amount of $37,424.54, for which Plaintiffs are entitled to seek recovery from Titan, Payne, or both.

III.

CONCLUSION

81. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** the Titan Defendants to pay Plaintiffs' reasonable expenses, including reasonable attorneys' fees, within thirty-five (35) days of the entry of this Order as follows:

a. Titan shall pay Plaintiffs' reasonable expenses, including reasonable attorneys' fees, in the total amount of $246,577.50, with Aedo and Payne

to have joint and several liability with Titan for portions of this amount as allocated below;

b. Aedo and Titan shall be jointly and severally liable to Plaintiffs for $72,235.48 in divisible expenses caused solely by Aedo's conduct and for Aedo's one-third share of indivisible expenses totaling $104,281.25 (i.e., $34,760.41) for a total amount of $106,995.89, for which Plaintiffs are entitled to seek recovery from Titan, Aedo, or both; and

c. Payne and Titan shall be jointly and severally liable to Plaintiffs for $51,060.79 in divisible expenses caused solely by Payne's conduct and for Payne's one-third share of indivisible expenses totaling $104,281.25 (i.e., $34,760.41) for a total amount of $85,821.20, for which Plaintiffs are entitled to seek recovery from Titan, Payne, or both.

**SO ORDERED**, this the 5th day of September, 2019.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge